UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>JOSEPH E. MARSHALL, JR. (AKA WESLEY R. PITTMAN AND AKA JOHN JOHNSON),<br><br>*Defendant*. | Crim. Case No. 1:69-cr-1895<br><br>The Hon. Judge Amit P. Mehta |

**DEFENDANT'S SUPPLEMENTAL BRIEF REGARDING POST-RELEASE OPTIONS IN RESPONSE TO THE COURT'S INQUIRY DURING ITS NOVEMBER 9 HEARING**

During the Court's November 9 hearing ("Hearing") on Defendant's Motion for Compassionate Release ("Motion" or "Mot."), the Court requested additional information on post-release options in the event that it grants Defendant's Motion. Defendant respectfully submits three options for the Court's consideration. *First*, the Court could release Joseph while requiring a term of probationary release in the Western District of Wisconsin, contingent upon that District's acceptance of supervision responsibilities. *Second*, the Court could release Joseph while requiring a term of probationary release in the District of Columbia while Joseph awaits a transfer to the Western District of Wisconsin, during which time he may be able to reside in temporary housing administered by the District of Columbia's Department of Human Services ("DC DHS"). *Third*, the Court could release Joseph without requiring a term of probationary or other supervised release. These three options are described in further detail below.

I. **Probationary Release under Supervision of Federal Probation Authorities in the Western District of Wisconsin.**

Federal law empowers this Court to "determin[e] . . . the conditions of" any term of probationary release that it imposes. *See* 18 U.S.C. § 3583(c); *see also United States v. Johnson*,

1

529 U.S. 53, 60 (2000) (stating that a trial court "may modify an individual's conditions of supervised release . . . as it sees fit"). Specifically, "[t]he court may provide . . . that the defendant . . . reside in a specific place or area[.]" 18 U.S.C. § 3563(b)(13); *see also* 18 U.S.C. § 3563(b)(15) (the court may provide that the defendant "report to a probation officer as directed by the court or the probation officer."). Courts granting COVID-related compassionate release motions have recently exercised this discretion to permit defendants to reside in other judicial districts. *See United States v. Stewart*, No. 4:09-cr-00029-GKF, ECF No. 151, at 3 (N.D. Okla. Oct. 28, 2020) (authorizing defendant to "resid[e] at the residence of his sister in the Southern District of Texas"); *see also United States v. Canini*, No. 1:04-cr-00283-PAC, ECF No. 337, at 7 (S.D.N.Y. June 8, 2020) (authorizing defendant's post-release "living situation with his partner and family in Rhode Island"). In fact, "approximately 20 percent of persons under supervision were sentenced in districts other than the district of supervision."[1]

Unfortunately, federal district courts do not have "unlimited discretion to transfer jurisdiction of his supervised release to another district." *United States v. Murdock*, 735 F.3d 106, 110 (2d Cir. 2013). Instead, such a transfer requires the concurrence of supervisory authorities in that other district. *Id.* at 111 (*citing* 18 U.S.C. § 3605) ("A court, after imposing a sentence, may transfer jurisdiction over a . . . person on supervised release to the district court for any other district to which the person is required to proceed as a condition of his . . . release, or is permitted to proceed, *with the concurrence of such court*.").[2] In this case, that supervisory authority is the U.S. Probation and Pretrial Services Office in the Western District of Wisconsin.

---

[1] "Overview of Probation and Supervised Release Conditions," Probation & Pretrial Servs. Off., Admin. Off. of the U.S. Courts, at 13 (Nov. 2016), *available at* this link.

[2] *C.f. Stewart*, at 3 (granting compassionate release to defendant whose release plan "include[d] him residing at the residence of his sister in the Southern District of Texas, *who has accepted his supervision*.") (emphasis added).

2

Defendant's counsel has communicated with that office in Eau Claire, Wisconsin, which has begun reviewing Joseph's case file and working with the D.C. supervisory authorities on an expedited basis to formalize the acceptance process. *See* Kingsolver Decl., ¶¶ 1-4 & Ex. A. While we are hopeful that these Wisconsin authorities will accept supervisory responsibilities, we have not yet received a final determination. *Id.*

Prentice, Wisconsin is a rural town in north-central Wisconsin (Mot. at 19; Opp. at 14), but despite not being a major metropolis, Prentice is within relatively short distances from many of the important resources that will ease Joseph's transition back to society, including:

- **Healthcare.** Located in Phillips, Wisconsin, which is less than a twenty-minute drive from Prentice, is the Marshfield Clinic Phillips Center,[3] which provides offers financial assistance to needy patients, including "free or discounted care."[4]

- **General Re-entry Resources.** Two non-profit organizations in Wausau, which is an hour's drive from Prentice, offer general support to help meet the needs of individuals who have been released from prison: Catholic Charities[5] and The Open Door.[6] The Open Door, which is an affiliate of the United Way, describes the services it offers as:

    The Open Door of Marathon County offers temporary help to current and newly released inmates, clothing, a safe place once released from jail to have a coffee and talk to volunteers about the resources that are available to them. Two of those resources are The Making Amends classes and Partner Project. . . . The Open Door is a community based collection of volunteers dedicated to providing service, support and a helping hand to currently released inmates, . . . [which] provide[s] Life Skills and Job Readiness Training Classes, Making Amends Classes, Partner Project and referral resource services in a friendly, non-threatening environment. The Open Door meets people at perhaps their greatest time of need.

---

[3] Address: 104 Trinity Avenue, Phillips, WI, 54555; phone: 715-339-2101; website: https://www.marshfieldclinic.org/.

[4] *See* Financial Assistance Application, Marshfield Clinic, https://www.marshfieldclinic.org/mPatientResources/Documents/9-82547%20English.pdf.

[5] Address: 540 S 3rd Avenue, Wausau, WI 54401; phone: (715) 849-3311; website: https://cclse.org/wausau/.

[6] Address: 319 4th Street, Ste. 2, Wausau, WI 54403; phone: (715) 848-4044; website: https://unitedwaymc.galaxydigital.com/agency/detail/?agency_id=30586.

Moreover, the undersigned counsel also intends to assist Joseph in applying for government benefits, including Social Security income, Medicare and/or Medicaid health insurance, and food assistance benefits.

## II. Probationary Release in the District of Columbia While Awaiting Transfer to the Western District of Wisconsin.

Until the Wisconsin authorities consent to the transfer plan, if the Court opts to impose a period of probationary release upon Joseph's release, that probationary release would need to begin in the District of Columbia.

During the November 9 hearing, the Court and the parties discussed the possibility of Joseph residing with his children, but that is not a viable option.[7] Also, although Joseph's four siblings reside in Washington, D.C., none has the practical ability to provide immediate housing to Joseph.[8] However, immediate housing may be available through the "PEP-V" program, which is administered by the D.C. Department of Human Services ("DC DHS"). The PEP-V program provides socially-distanced housing and medical care for vulnerable D.C. residents. *See* Kingsolver Decl., ¶ 4 & Ex. B. Defendant's counsel has spoken with Dr. Sheila Jones—the

---

[7] With sincere apologies to the Court, counsel inadvertently misspoke during our November 9 hearing. Joseph does not have children, as the Government's opposition brief—based on a mistaken BOP record— suggests. *See* Opp. at 14; *id.* at Ex. A 002 ("[Joseph]'s primary partner is a positive influence in his life. [Joseph] has two children, ages 39 and 42."). It appears that the BOP document, which contains the notes of a BOP "psychosocial interview," inadvertently attributed *Ms. Vasicek*'s children to Joseph, as Ms. Vasicek has two adult children in their forties.

Defendant's counsel advised the Court that we believed that Joseph had been in contact with his children as of a year ago, but counsel misremembered his conversations with Joseph. In reality, Joseph has several *nieces and nephews* with whom he has maintained contact, and during the hearing, counsel's memory crossed wires. Counsel spoke with Joseph on November 11, and Joseph informed us that he does not believe any of his nieces or nephews have the capacity to provide him with immediate housing.

[8] Joseph has four siblings, who all reside in Washington, D.C., but Joseph's two sisters—Brenda Marshall, a 68-year-old retired director of a day care center, and Deborah Marshall, a 60-year-old retired hospital worker—live together in Section 8 housing with no additional bedrooms. Joseph's 72-year-old brother—Robert Marshall, a retired construction worker—resides in an assisted living facility, and Joseph's 62-year-old brother Ronald Marshall is himself on disability with a meager income and living situation.

Chief of DC DHS's Critical Response Team, which leads the PEP-V program—who expressed optimism that Joseph would be a suitable candidate for housing and medical care through this program.  *Id.* ¶¶ 6-8 and Ex. C.  Dr. Jones may be able to provide confirmation tomorrow afternoon (November 12) that such housing is available for Joseph.  *Id.*

**III.    No Probationary or Supervised Release.**

This Court has the authority to release Mr. Marshall without imposing any term of probationary or supervised release.  This Court "***may*** impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment[.]"  *See* 18 U.S.C. § 3582(c)(1)(A) (emphasis added).[9]  Consequently, this Court has discretion to release Joseph without imposing a term of probation or supervised release.

The Hon. Judge John Pratt did not include any period of probationary or supervised release in the sentence he imposed.  Mot., Ex. A (Docket) at 3-4; *see also* 18 U.S.C. § 3601 (requiring a defendant to be supervised post-release "to the degree warranted by the conditions specified by the sentencing court."); *contra Canini*, at 7 (ordering supervised release "as previously imposed . . . by the Court as set forth in the judgment dated July 20, 2007.").

---

[9] As previously briefed, Mr. Marshall has already served a decade more than the minimum sentence imposed in his "original term of imprisonment."  *See* Opp. at 1 ("Defendant . . . has served 45 years of his 35 years to life sentence in this case").

5

**Dated: November 11, 2020**          Respectfully submitted,

_/s/ Justin D. Kingsolver_
Justin D. Kingsolver (DC & D.D.C. Bar No. 1033806)
**CROWELL & MORING LLP**
1001 Pennsylvania Ave. NW
Washington, D.C. 20004
Telephone: (202) 624-2500
JKingsolver@crowell.com

Dylan S. Burstein (CA Bar No. 307083)
**CROWELL & MORING LLP**
515 South Flower St.
Los Angeles, CA 90071
Telephone: (213) 310-7990
DBurstein@crowell.com

*Attorneys for Defendant Joseph E. Marshall, Jr.*